# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| SARAH L. COFFEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:17-CV-852-PPS/MGG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Sarah Coffee appeals the Social Security Administration's decision to deny her application for Disability Insurance Benefits. Coffee alleges a disability due largely to Ehlers-Danlos, a connective tissue disorder. [Tr. 218.][1] An administrative law judge found that Coffee was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform sedentary work with only certain restrictions.

Coffee challenges the ALJ's decision on two grounds. First, she contends the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the effects of her Ehlers-Danlos syndrome. Second, Coffee argues that the ALJ's credibility determination was flawed. Because I find the ALJ's analysis of Coffee's subjective symptoms was not supported by substantial evidence and was not

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 10.

specific enough for me to fully understand the ALJ's reasoning, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

The ALJ found that Coffee had the severe impairments of Ehlers-Danlos syndrome, history of POTS/dysautonomia; cardiac dysrhythmias; left hip dysplasia and labral tear; status post arthroscopy with partial synovectomy and labral repair. [Tr. 14.] Aside from these severe impairments, Coffee had several other medical challenges, as well as the non-medically determinable impairments of carpal tunnel syndrome and migraine headaches, which are fully recounted in the ALJ's opinion and which need not be repeated here. [*See* Tr. at 14-22.]

Let's start with a review of the legal framework. I am not supposed to determine from scratch whether or not Coffee is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical

review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

**Credibility/Analysis of Subjective Symptoms**

The regulation that previously governed credibility determinations, SSR 96-7p, was superseded by SSR 16-3p in March 2016. Because the ALJ's decision was issued in January 2017, SSR 16-3p is the proper standard for me to consider. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' characters; obviously, [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Under the new regulation an ALJ is still required to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p. 1996 WL 374186, at *3 (July 2, 1996). The ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the

3

adjudicator evaluated the individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *9 (Mar. 16, 2016).

Although courts historically did not overturn the ALJ's credibility determination unless it was "patently wrong," *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008), "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record [wa]s grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir 2009)); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016).

Here, the ALJ addresses Coffee's statements about her symptoms in the following section, which causes me concern:

> Even accepting the limited activities alleged at hearing, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other facts discussed in this decision.

[Tr. 21.]

Turning to the first half of the ALJ's comment, it is improper for the ALJ to have discredited Coffee's statements concerning her subjective symptoms because her daily activities cannot be "objectively verified." The Court in *Austin v. Colvin*, No. 13 C 7257,

4

2014 WL 6807841 (N.D. Ill. Dec. 2, 2014), dealt with a similar situation in which a claimant with Ehlers-Danlos claimed the ALJ did not properly consider her complaints of pain. In that case, the Court cited the Ehlers-Danlos National Foundation:

> Chronic pain is a well-established and cardinal manifestation of Hypermobility EDS and it is common for pain to be out of proportion to physical and radiological findings. The origin of the pain is not clearly understood, but some of the likely causes include muscle spasm (tender points are sometimes present) and degenerative arthritis; neuropathic pain is also common.

*Austin*, 2014 WL 6807841, at *4 (quoting http://ednf.org/hypermobility-type). *Austin* went on to acknowledge that under C.F.R. § 404.1529(c)(2), the Social Security Administration "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." *Id.* at *4. Yet, the ALJ did just that — she faulted Coffee's daily activities for not being objectively verifiable. The Seventh Circuit has held that an "ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting the ALJ erred in her "belief that complaints of pain, to be credible, must be confirmed by diagnostic tests"); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("Pain is always subjective in the sense of being experienced in the brain.").

A claimant with Ehlers-Danlos is analogous to a claimant with fibromyalgia which is a "complex medical condition characterized primarily by widespread pain in

5

the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3017612 (July 25, 2012). As the Sixth Circuit has noted, "given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). This type of analysis would seem to apply to Ehlers-Danlos as well, where laboratory, x-ray, or physical findings might not necessarily indicate the level of pain suffered. In sum, the ALJ in this case inappropriately rested her determination too heavily on the absence of objective support for Coffee's complaints "without digging more deeply." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

In considering the second half of the ALJ's comments about Coffee's statements, there is a problem with that as well. The ALJ remarked that even if Coffee's daily activities were as limited as she claims, she found it "difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons . . . ." [Tr. 21.] This statement is a bit befuddling, as I don't know what the ALJ meant by attributing Coffee's pain and/or limitations to "other reasons." [*Id.*] Is she suggesting that Coffee is exaggerating her limitations, or lying about her pain, or is she suggesting other factors have influenced Coffee's condition? I don't know, and that is the problem. I fully recognize that the ALJ is in the best position to determine the credibility of Coffee's pain assertions as a direct witness to her testimony. But an ALJ must build a

6

logical bridge from the evidence to her conclusions regarding Coffee's subjective symptoms. That determination "must be specific enough to make clear . . . how much weight the ALJ gave to the [witness's] testimony and the reasons for that decision." *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008). Here, where the ALJ did not "build an accurate and logical bridge from the evidence" to her analysis of Coffee's statements, *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), this prevents me from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Without suggesting whether the ALJ's determination of Coffee's symptoms such as pain was incorrect, I find that greater elaboration and explanation is necessary. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

In sum, this case must be remanded for the analysis of Coffee's subjective symptoms. *See Carradine*, 360 F.3d at 754 (remanding credibility determination where ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness."). On remand, the ALJ should re-evaluate Coffee's subjective symptom statements and her daily living activities, with due regard to the full range of medical evidence, and then sufficiently articulate how she evaluated that evidence and explain the logical bridge from the evidence to her conclusions.

### Residual Functional Capacity

Coffee also contests the ALJ's RFC determination. In this case, the ALJ gave the opinion of Coffee's longtime primary care physician, Dr. Bajuyo, "little weight." [Tr. at 22.] This is also concerning to me.

Dr. Bajuyo opined in a narrative report dated October 21, 2014, that she believed Coffee was "substantially disabled" by her Ehlers-Danlos and the given the severity, unpredictability, and lengthy recovery of her symptoms, she would be "unable to work in any capacity for several days per month, likely more than a week per month." [Tr. 414.] Dr. Bajuyo stated that she had been Coffee's primary care physician since 2010, and that Coffee "began to have more manifestations of EDS, such as bone and joint pains and instability." [*Id.*] "Those were debilitating at times and were occurring more frequently." [*Id.*] Dr. Bajuyo also stated that Coffee presented "with a swollen ankle and inability to walk without having incurred any injury. She would sustain a low back strain by simply rolling over in bed. Many of these musculoskeletal injuries would take several weeks to heal, require rest and various braces for support." [*Id.*] Dr. Bajuyo referred Coffee to a rheumatologist in 2012, and the diagnosis of Ehlers-Danlos was confirmed. [*Id.*] Dr. Bajuyo opined that the only treatment for soft tissue injuries was "anti-inflammatories and rest" and "[b]ecause [Coffee] realizes this, she does not have a lengthy medical chart documenting every time she has an injury or a bad day relating to her EDS symptoms. She just stays home and deals with it on her own, except for the

8

very significant injuries, such as the torn rotator cuff tendon she experienced last year without any apparent injury." [*Id.*]

Because this case is being remanded on the analysis of subjective symptoms issue, I do not need to directly determine whether the opinion of Dr. Bajuyo was entitled to controlling weight. However, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Mueller v. Astrue*, 493 F. App'x 772, 776-77 (7th Cir. 2012) (remanding ALJ decision that did not consider the checklist of factors); *Campbell v. Astrue,* 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence.").

Although the ALJ notes that Dr. Bajuyo was Coffee's "longtime" primary care physician, the ALJ fails to discuss the length and frequency of treatment by Dr. Bajuyo. Additionally, the ALJ did not consider the nature of the treatment, or the consistency or supportability of Dr. Bajuyo's opinion compared to other things in the record. The ALJ faults Dr. Bajuyo for not pursuing "the type or level of medical treatment one would expect, given her opinion that the claimant is disabled" [Tr. 22], but this fails to account

9

for Dr. Bajuyo's explanation in her letter that with Ehlers-Danlos, the only treatment is rest and anti-inflammatory medication. [Tr. 414.] The ALJ also commented that Coffee's symptoms and limitations must be objectively documented, and brought up the possibility that Coffee demanded her physician provide the note, or that Dr. Bajuyo's opinion resulted from sympathy. [Tr. 22.] The ALJ is cautioned not to impermissibly play doctor or rely on speculation. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

On remand, the ALJ should reevaluate the opinion of treating physician Dr. Bajuyo. If the ALJ again determines that her opinion is not entitled to controlling weight, the ALJ should make sure to address the various factors set forth in 20 C.F.R. § 404.1527(c) in assessing the weight to afford Dr. Bajuyo's opinion.

\* \* \*

There is one final matter. Coffee asks this Court to find that she is disabled. However, an outright reversal of the ALJ's decision is not appropriate because there is evidence in the record that could support a finding of non-disability. An award of benefits "is appropriate only if all factual issues have been resolved," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005), and where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). That is not true here.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: January 22, 2019.

                                                /s/ Philip P. Simon
                                                PHILIP P. SIMON, JUDGE
                                                UNITED STATES DISTRICT COURT